IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


DETLEF F. HARTMANN,          :
                                        :
                Petitioner,      :
                                          :
       v.                       :      Civil Action No. 20-33-GBW
                                          :
ROBERT MAY, Warden, and     :
ATTORNEY GENERAL OF THE   :
STATE OF DELAWARE,        :
                                          :
            Respondents.     :

---

Detlef F. Hartmann. *Pro Se* Petitioner.

Brian L. Arban, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

---


**MEMORANDUM OPINION**[1]


March 27, 2023
Wilmington, Delaware

---

[1]This case was re-assigned to the undersigned's docket on September 7, 2022.

Williams, District Judge:

Presently pending before the Court are Petitioner Detlef F. Hartmann's

Petitions for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and

Memoranda in Support. (D.I. 3, 8, 10, 23, 25, 26, 29-31, 39, 45, 47, 51, 52, 54, 56,

65, 93)  The State filed an Answer in opposition. (D.I. 103)  For the reasons

discussed, the Court will deny Petitioner's habeas requests.

## I.      BACKGROUND

### A. The Crime

In late 1999, Delaware State Police were investigating a report that a minor

girl had been sexually abused by her two brothers. (D.I. 103 at 9)  When the girl's

thirteen-year-old brother was asked where he had learned this behavior, he

revealed that he had learned the acts during the previous summer spent with

Petitioner. (*Id.*; D.I. 104-22 at 6)  The victim had been introduced to Petitioner

while at church, and, with the father's permission, the brother agreed to do odd

jobs for Petitioner in the summer of 1998 to earn some extra money.  The brother

reported that the first incident took place at Killen's Pond State Park where the

brother and Petitioner were jogging.  Petitioner suggested that they take a break,

and Petitioner began touching the brother in a sexual manner and began to

masturbate the brother.  The second, third, and fourth incidents took place in a

bathroom at Petitioner's home, with Petitioner and the brother masturbating each

other and performing other sexual acts, including intercourse.  (D.I. 104-22 at 6-7)
The fifth incident occurred in Petitioner's living room, where the victim was seated
on the couch while Petitioner performed sexual acts on him.  Petitioner filmed
these sexual acts.  (D.I. 104-22 at 7)  At the time of the offenses, Petitioner was 45
years old and married with two young children.  (D.I. 104-23 at 2)  When the State
Police searched Petitioner's computer, they located thousands of pornographic
photos, including 150 pictures of suspected homosexual male child pornography.
(D.I. 104-23 at 8)

### B.  Procedural History

Petitioner was arrested in December 1999 and subsequently indicted on
eight counts of second degree unlawful sexual contact, six counts of first degree
unlawful sexual intercourse, five counts each of dealing in child pornography and
possession of child pornography, and one count each of unlawful sexual
exploitation of a child and sexual solicitation of a child.  (D.I. 104-1 at 2; D.I. 103
at 2).  In March 2001, Petitioner pled guilty in the Delaware Superior Court to one
count of second degree unlawful sexual intercourse (a lesser included offense of
first degree unlawful sexual intercourse) and two counts of unlawful sexual
contact.  *See Hartmann* v. State, 818 A.2d 970 (Table), 2003 WL 1524623, at *1
(Del. Mar. 20,  2003).  Petitioner was immediately sentenced to an aggregate of
nineteen years of incarceration, suspended after ten mandatory years for decreasing

2

levels of supervision. *See Hartmann v. State*, 19 A.3d 301 (Table), 2011 WL
1486567, at *1 (Del. Apr.19, 2011). Petitioner was designated a Tier III sex
offender and was ordered to have no contact with minors, except for his biological
children. Petitioner did not file a direct appeal from his sentence. *See id.*

In August 2003, Petitioner filed his first petition for habeas corpus relief
pursuant to 28 U.S.C. § 2254. *See Hartmann v. Carroll*, 2004 WL 2713104, at *1
(D. Del. Nov. 16, 2004). The Honorable Joseph J. Farnan denied the petition as
time-barred. *See id.* at *5. The Third Circuit Court of Appeals affirmed that
decision. *See Hartmann v. Carroll*, 492 F.3d 478, 479 (3d Cir. 2007).

In February 2009, while Petitioner was serving probation, the State moved to
modify the no contact provision of Petitioner's sentence to forbid him from
contacting any minor child, including any biological child who had been adopted
after the termination of his parental rights. *See Hartmann*, 2011 WL 1486567, at
*1. The Superior Court granted the motion. Petitioner appealed, and the Delaware
Supreme Court dismissed the appeal as untimely. *See id.*

Petitioner then filed a series of motions, including a Rule 61 motion for
postconviction relief, which were all denied on December 22, 2010. (D.I. 104-1 at
18) In April 2011, the Delaware Supreme Court affirmed the Superior Court's
decision, explaining that: (1) to the extent Petitioner was challenging his 2001
convictions, the Rule 61 motion was untimely; (2) to the extent he was challenging

3

the termination of his parental rights, the Family Court had exclusive jurisdiction and the issue was not within the Superior Court's jurisdiction to review;  (3) to the extent he was challenging the Superior Court's 2009 modification of the condition of his probation prohibiting his contact with any of his biological children for whom his parental rights had been terminated, the argument was meritless; (4) the Superior Court did not abuse its discretion in denying Petitioner's motion to appoint counsel because there is no constitutional or statutory right to counsel in a criminal collateral proceeding; and (5) the Superior Court did not abuse its discretion in restricting Petitioner's access to the internet while on probation since he had been charged with possession of child pornography.  *See Hartmann*, 2011 WL 1486567, at *1-2.

In May 2011, Petitioner was arrested on an administrative warrant for a violation of probation ("VOP") based on a search of Petitioner's residence in which was found two deadly weapons and a laptop computer with Wi-Fi capability.  *See Hartmann v. State*, 61 A.3d 618 (Table), 2013 WL 434052, at *2 (Del. Feb. 4, 2013).  While not part of the administrative warrant, a subsequent search of the laptop revealed thousands of pornographic images, the majority of which were age indeterminate.  (D.I. 104-20 at 70-71)  At a hearing in April 2012, the Superior Court found that Petitioner had committed a VOP and sentenced him accordingly to four years of Level V imprisonment, to be followed by probation.

4

*See Hartmann*, 2013 WL 434052, at *1. Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's VOP determination. *See id.* at *1-2.

In April 2012, Petitioner filed his second § 2254 petition in this Court, arguing that the Delaware Family Court improperly terminated his parental rights and that the Superior Court's 2009 modification of the no-contact provision violated his rights to procedural due process and equal protection of the laws. *See Hartmann v. Johnson*, 2013 WL 969807, at *2 (D. Del. Mar. 11, 2013). The Honorable Sue L. Robinson denied the petition in March 2013 because the claims were not cognizable on federal habeas review. *See id.*

In December 2014, the Superior Court modified Petitioner's VOP sentence "to reflect there is no suspension of the [L]evel 5 time until the defendant successfully completes the Sexual Adjustment Programs." (D.I. 104-1 at Entry No. 259; D.I. 104-20 at 52). In March 2015, Petitioner filed in the Superior Court a *pro se* motion for review of his sentence. In April 2015, the Superior Court denied the motion as untimely under Superior Court Criminal Rule 35 ("Rule 35") because it was filed more than 90 days after the imposition of Petitioner's sentence. (D.I. 104-1 at Entry No. 261)

In August 2019, an administrative warrant and VOP report were docketed in the Superior Court, alleging that petitioner had violated his probation by having sexual contact with a minor. (D.I. 104-1 at Entry Nos. 264, 265); *see Hartmann v.*

5

*State*, 223 A.3d 883 (Table), 2019 WL 6813986, at *1 (Del. Dec. 12, 2019).  After a hearing in September 2019, the Superior Court found that Petitioner had committed a VOP, and sentenced him as follows: (1) on one count of his unlawful sexual contact, Petitioner was sentenced to two years of Level V Transitions Sex Offender Program; and (2) on the other count of his unlawful sexual contact, Petitioner was sentenced to two years of Level V imprisonment, suspended after one year and successful completion of the Transitions Program, for two years of probation.  *See id.*  On appeal, Petitioner argued that: (1) his 2001 convictions should be invalidated; (2) there was insufficient evidence to support the VOP finding; (3) the State violated its duty to represent Petitioner and the public at the VOP hearing; and (4) counsel provided ineffective assistance during the VOP hearing.  *Id.* at *2.  In affirming the Superior Court's decision, the Delaware Supreme Court declined to consider Petitioner's ineffective assistance of counsel claims relating to his 2019 VOP for the first time on direct appeal.  The Delaware Supreme Court also found that Petitioner's challenges to his 2001 convictions based on allegedly being a member of a protected class and his related ineffective assistance of counsel claims were not "justiciable in this appeal" because Petitioner "needed to do that in a direct appeal or a [Rule 61] motion for postconviction relief."  *Id.* at *2.  The Delaware Supreme Court denied Petitioner's insufficient evidence claims as unsupported, noting that Petitioner's own admissions did not

6

constitute hearsay and the State did not have to file new criminal charges to prosecute him on the VOP. *Id.* The Delaware Supreme Court also found that the State had not violated any duty to Petitioner or the public in the VOP proceedings. *Id.*

In January 2020, Petitioner commenced this proceeding by filing a *pro se* pleading styled as a petition seeking the issuance of a writ of habeas corpus under 28 U.S.C. § 2254. (D.I. 3) After the issuance of a deficiency notice, Petitioner filed a corrected Petition on July 23, 2020. (D.I. 8) Petitioner has subsequently filed numerous exhibits, amendments, and supplements to his Petition. (*See* D.I. 23, 25, 26, 29-31, 39, 47, 52, 54, 56, 65, 93) Petitioner has also requested mandamus relief or preliminary injunctions based on administrative or healthcare procedures or conditions related to his confinement. (*See* D.I. 11, 13, 28, 29, 43, 46, 51) On September 16, 2021, this Court concluded that such requests were not properly brought in Petitioner's instant habeas proceeding, but rather, they must be brought in an action under 42 U.S.C. § 1983. (D.I. 79-18 at 1) The Court also ruled that "any future filings raising prison condition issues and/or medical issues will not be filed in this proceeding but will be viewed as initiating a new case opening." *Id.* at 4.

7

## II.    GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).  Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.  Second or Successive Habeas Petitions

Pursuant to 28 U.S.C. § 2244(b)(3)(A), a petitioner must seek authorization from the appropriate court of appeals before filing a second or successive habeas petition in a district court.  *See Burton v. Stewart*, 549 U.S. 147, 152 (2007); Rule 9, 28 U.S.C. foll. § 2254.  Notably, a petition for habeas relief is not considered to be "second or successive simply because it follows an earlier federal petition." *Benchoff v. Colleran*, 404 F.3d 812, 817 (3d Cir. 2005).  Rather, a habeas petition

8

is classified as second or successive within the meaning of 28 U.S.C. § 2244 if a prior petition has been decided on the merits, the prior and new petitions challenge the same conviction, and the new petition asserts a claim that was, or could have been, raised in a prior habeas petition. *See Benchoff,* 404 F.3d at 817; *In re Olabode,* 325 F.3d 166, 169-73 (3d Cir. 2003). If a habeas petitioner erroneously files a second or successive habeas petition "in a district court without the permission of a court of appeals, the district court's only option is to dismiss the petition or transfer it to the court of appeals pursuant to 28 U.S.C. § 1631." *Robinson v. Johnson,* 313 F.3d 128, 139 (3d Cir. 2002). The Supreme Court has held that "the phrase 'second or successive' must be interpreted with respect to the judgment challenged." *Magwood v. Patterson,* 561 U.S. 320, 333 (2010).

## C. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842-44 (1999); *Picard v. Connor,* 404 U.S. 270, 275 (1971). AEDPA states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or

9

> (B)(i) there is an absence of available State corrective
> process; or (ii) circumstances exist that render such
> process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of

comity, gives "state courts one full opportunity to resolve any constitutional issues

by invoking one complete round of the State's established appellate review

process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192

(3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the

habeas claims were "fairly presented" to the state's highest court, either on direct

appeal or in a post-conviction proceeding, in a procedural manner permitting the

court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451

n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). If the petitioner raised

the issue on direct appeal in the correct procedural manner, the claim is exhausted

and the petitioner does not need to raise the same issue again in a state post-

conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.

1997).

If a petitioner presents unexhausted habeas claims to a federal court, and

further state court review of those claims is barred due to state procedural rules, the

federal court will excuse the failure to exhaust and treat the claims as exhausted.

*See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[]

10

the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006).  Such claims, however, are procedurally defaulted. *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000).  Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.  To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

11

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[2] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *See Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## D. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court

---

[2]*Murray*, 477 U.S. at 496.

of the United States," or the state court's decision was an unreasonable

determination of the facts based on the evidence adduced in the trial.  28 U.S.C. §

2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*,

250 F.3d 203, 210 (3d Cir. 2001).  A claim has been "adjudicated on the merits"

for the purposes of § 2254(d) if the state court decision finally resolved the claim

on the basis of its substance, rather than on a procedural or some other ground.  *See*

*Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).  The deferential standard of §

2254(d) applies even "when a state court's order is unaccompanied by an opinion

explaining the reasons relief has been denied."  *Harrington v. Richter*, 562 U.S. 86,

98 (2011).  As explained by the Supreme Court, "it may be presumed that the state

court adjudicated the claim on the merits in the absence of any indication or state-

law procedural principles to the contrary."  *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that

the state court's determinations of factual issues are correct.  *See* § 2254(e)(1).

This presumption of correctness applies to both explicit and implicit findings of

fact, and is only rebutted by clear and convincing evidence to the contrary.  *See* §

2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v.*

*Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard

in § 2254(e)(1) applies to factual issues, whereas the unreasonable application

standard of § 2254(d)(2) applies to factual decisions).

13

## III.   DISCUSSION

The Court liberally construes Petitioner's voluminous pleadings as raising the following categories of claims:[3] (1) claims related to his 2001 convictions; (2) claims related to his 2012 VOP; (3) claims concerning his 2019 VOP; (4) claims that are not cognizable on federal habeas review because they assert errors of Delaware state law, concern the conditions of his confinement, or do not provide a right to pursue; and (5) claims that are too vague, conclusory, or unintelligible.

### A. Claims One to Eleven: Challenges to 2001 Convictions

Petitioner asserts the following eleven arguments challenging his March 2001 convictions for unlawful sexual intercourse and sexual contact: (1) the Delaware Division of Family Services ("DFS"), and not Superior Court, had personal and subject matter jurisdiction over his matter (D.I. 8 at 26 -29; D.I. 56 at 2); (2) Petitioner is a member of a legally protected class and immune from criminal prosecution (D.I. 8 at 26; D.I. 8-1 at 4 to 5); (3) the State fraudulently brought the original criminal charges against Petitioner and maliciously prosecuted him (D.I. 8 at 26; D.I. 8-1 at 4); (4) Petitioner's private health information was improperly entered into the public record as part of his sentencing (D.I. 8-2 at 17); (5) Petitioner has involuntarily signed various forms and papers despite being disabled and legally incompetent since the time of his arrest in 1999 (D.I. 8-3 at

---

[3]For ease of analysis, the Court has re-numbered the Claims sequentially.

29); (6) Petitioner's guilty plea was coerced (D.I. 30); (7) the State allegedly had insufficient evidence to convict Petitioner (D.I. 8-4 at 17); (8) the judges in the Delaware courts committed misconduct by abusing their discretion, having conflicts of interest, and violating judicial canons (D.I. 8-5 at 8-16); (9) requiring Petitioner to register as a sex offender under Delaware's sex offender registration statute, 11 Del. C. § 4121 ("SORNA"), is unconstitutional and amounts to cruel and unusual punishment, false imprisonment, and places arbitrary and capricious restrictions on him (D.I. 8-4 at 25-30; D.I. 8-5 at 1-5); (10) the "legal elements and sentencing guidelines" for unlawful sexual conduct are, among other deficiencies, unequal, wrongfully subjective, biased, prejudicial, and discriminatory (D.I. 8-4 at 14); and (11) the Delaware state courts violated Petitioner's rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, Fourteenth, Fifteenth, and Sixteenth Amendments to the United States Constitution (D.I. 56).[4]

Once again, the Court notes that the instant Petition contains arguments challenging several judgments, namely, Petitioner's original 2001 convictions and his 2012 and 2019 VOPs. In 2005, the Supreme Court noted that the requirements of § 2244(b)(2) do not apply to a petition as a whole but require inquiry into specific claims. *See Pace v. Diguglielmo*, 544 U.S. 408, 416 (2005). In 2010, the

---

[4]The Court liberally construes the arguments in D.I. 56 as contesting all the categories of judgments.

Supreme Court held that "the phrase 'second or successive' must be interpreted with respect to the judgment challenged." *Magwood v. Patterson*, 561 U.S. 320, 333 (2010) (stating that where "there is a new judgment intervening between ... two habeas petitions, an application challenging the resulting new judgment is not 'second or successive' at all."). The State asserts that the Third Circuit may view the phrase "second or successive" as applying to entire habeas petitions and not to individual claims in those petitions, thereby requiring the dismissal of an entire petition as second or successive if it contains any second or successive claims. (D.I. 103 at 18) The Court is not persuaded, because it has not found any explicit consistent rule or approach for "mixed" habeas petitions containing some claims which are second or successive and some claims which are not when, as here, the other intervening judgments being challenged are violations of probations and not new sentences imposed as a result of the first habeas proceeding or as a result of an appellate remand. *See, e.g., Woods v. Ryan*, 2019 WL 1560341, at *3 (D. Ariz. Feb. 27, 2019) (collecting cases). *But see Perez-Garcia v. Woods*, 2016 WL 11662173, *3 (E.D. Mich. Oct. 28, 2016) (concluding that the "inclusion of a claim in [petitioner's] current habeas petition that was previously denied on the merits renders his current petition a second or successive petition for purposes of 28 U.S.C. § 2244(b), even if some of the additional claims would not qualify as second or successive claims."). Since claims relating to Petitioner's 2012 and

16

2019 VOP decisions were not ripe at the conclusion of Petitioner's first 2003

habeas proceeding, they could not have been included in Petitioner's first petition.[5]

Consequently, the Court concludes that it may appropriately determine whether the

Claims challenging Petitioner's 2001 convictions are second or successive and, if

so, dismiss those claims for being second or successive without necessitating a

dismissal of the entire Petition as second or successive.

Claims One through Eleven challenge the same 2001 convictions that

Claims One through Eleven challenge the same 2001 convictions that Petitioner

---

[5]The State raises the possibility that Petitioner may have been able to raise Claims Twelve through Twenty in his second habeas petition, perhaps in an effort to suggest the Claims Twelve through Twenty are second or successive. (*See* D.I. 103 at 29) The following procedural history demonstrates why Claims Twelve through Twenty are not second or successive.

On April 6, 2012, the Superior Court found that Petitioner had violated his probation. On April 10, 2012, Petitioner filed his second habeas petition in this Court, which challenged the 2009 modification of his probation. (*See* D.I. 1 in *Hartmann v. State*, Civ. A. No. 12-436-SLR (D. Del. Apr. 10, 2012)). Given this sequence of events, the Court acknowledges that Petitioner technically could have raised his challenges to the April 2012 VOP decision in his April 2012 habeas petition. Importantly, however, the Delaware Supreme Court did not affirm the Superior Court's 2012 VOP decision until February 4, 2013, and Petitioner's second habeas petition was denied for failing to assert issues cognizable on federal habeas review on March 11, 2013. (*See id.* at D.I. 11) Although Petitioner did not seek certiorari review of the Delaware Supreme Court's decision, the ninety-day period for seeking such review must be included when determining the finality of his 2012 VOP decision. Adding ninety days to February 4, 2013 results with Petitioner's 2012 VOP decision becoming final on May 6, 2013, almost two full months after the dismissal of his second federal habeas petition. Given these circumstances, the Court concludes that Claims Twelve to Twenty are not second or successive claims.

17

challenged in his 2003 habeas petition, and the arguments either were[6] or could

have been raised in the 2003 petition.  In addition, the dismissal of Petitioner's

2003 petition as time-barred constitutes an adjudication on the merits for the

purposes of  § 2244(b).  *See Benchoff*, 404 F.3d at 817-18; *Murray v. Greiner,* 394

F.3d 78, 80-81 (2d Cir. 2005).  Given these circumstances, the Court concludes

that the aforementioned Claims constitute second or second habeas requests.

The record reveals that Petition did not obtain permission from the Third

Circuit Court of Appeals before presenting the instant second or successive Claims

in this proceeding.  In addition, since the instant arguments do not come close to

satisfying the substantive requirements for a second or successive petition under 28

U.S.C. § 2244(b)(2), the Court concludes that it would not be in the interest of

justice to transfer these Claims to the Court of Appeals for the Third Circuit.

Accordingly, the Court will dismiss Claims One through Eleven for lack of

jurisdiction because they are unauthorized second or successive habeas requests.

*See* 28 U.S.C. § 2244(b)(1); *Robinson v. Johnson,* 313 F.3d 128, 139 (3d Cir.

2002) (holding that when a second or successive habeas petition is erroneously

filed "in a district court without the permission of the court of appeals, the district

---

[6]Petitioner raised the argument that the Superior Court lacked jurisdiction over his
charges (Claim One in this proceeding) in his 2003 petition. *See Hartmann*, 2004
WL 2713104, at *1.

court's only option is to dismiss the petition or transfer it to the court of appeals

pursuant to 28 U.S.C. § 1631.").

### B. Claims Twelve to Twenty: Time-Barred Challenges to 2012 VOP Judgment

Petitioner asserts the following eight Claims challenging his 2012 VOP

judgement: (1) Claim Twelve – the State obstructed, impeded or denied Petitioner

certain rights and interests (*e.g.*, procedural rights, transcript rights, right to copy of

envelopes mailed) (D.I. 8-3 at 12,17-18); (2) Claim Thirteen – the Sate violated

Petitioner's procedural and substantive rights by lodging criminal charges against

Petitioner as part of his VOP proceeding (*Id.*); (3) Claim Fourteen – the VOP

proceedings were "too informal and summary for criminal charges/sentences"

(*Id.*); (4) Claim Fifteen – the State maliciously prosecuted Petitioner and did not

uphold his rights (D.I. 8-3 at 17); (5) Claim Sixteen – counsel provided ineffective

assistance of counsel during the 2012 VOP proceeding by failing to effectively

cross-examine unspecified witnesses and obtain experts (D.I. 8-3 at 12, 17); (6)

Claim Seventeen – Petitioner was improperly denied a copy of the VOP hearing

transcript and thereby improperly denied his appeal rights (D.I. 8-3 at 12, 17); (7)

Claim Eighteen – Petitioner's sentence was unlawfully increased (D.I. 8-3 at 15);

(8) Claim Nineteen – judicial misconduct (D.I. 8-5 at 8-16); and (9) Claim Twenty

– Generally alleging that the Delaware state courts violated Petitioner's rights

under the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, Fourteenth, Fifteenth,

and Sixteenth Amendments (D.I. 56).

AEDPA prescribes a one-year period of limitations for the filing of habeas

petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and

equitable tolling. *See Holland v. Florida*, 560 U.S. 631 (2010) (equitable tolling);

28 U.S.C. § 2244(d)(2) (statutory tolling). A petitioner may also be excused from

failing to comply with the limitations period by making a gateway showing of

actual innocence. *See Wallace v. Mahanoy*, 2 F. 4th 133, 151 (3d Cir. 2021) (actual

innocence exception).

Petitioner does not assert, and the Court does not discern, any facts triggering the application of § 2244(d)(1) (C) or (D).  To the extent the Court should construe Petitioner's contentions about alleged State-created impediments-to-filing as constituting an attempt to trigger a later starting date under § 2244(d)(1)(B), the attempt is unavailing.  Petitioner asserts that the State created unconstitutional impediments to his filing the instant Claims by limiting his access to the prison's law library, limiting and/or completely denying him access to the internet, and charging a fee for the materials he uses in litigating his claims. Petitioner's complaints appear to stem from typical conditions of prison life, which normally do not constitute unconstitutional state-created impediments.  *See, e.g., Maclin v. Robinson*, 74 Fed. App'x 587, 589 (6th Cir. 2003) (limited access to prison law library does not constitute a state impediment);  *Fox v. Holland*, 2016 WL 4943003, at *4 (N.D. Cal. Sept. 16, 2016) (finding complaints about inconsistent hours at the prison's law library, the lack of internet access, and inability to make photocopies insufficient to excuse untimely habeas petition). Petitioner also does not have a constitutional right to receive unlimited legal resources at the State's expense, including unfettered access to the prison's law library, and he has not demonstrated that he did not have a reasonable amount of time to use the prison's legal resources. *See Lindquist v. Idaho Bd. of Corr.*, 776 F.2d 851, 858 (9th Cir. 1985) ("[T]he Constitution does not guarantee a prisoner

21

unlimited access to a law library. Prison officials out of necessity must regulate the time, manner, and place in which library facilities are used."). Nor is the requirement that Petitioner pay for the materials he uses in litigating his claims automatically a constitutional violation constituting an impediment. *See Bounds v. Smith*, 430 U.S. 817, 824-25 (1977) (requiring the government to provide indigent inmates with pens, paper, notarial services, and stamps for legal documents); *Peterkin v. Jeffes*, 855 F.2d 1021, 1039 (3d Cir. 1988) (recognizing *Bounds* but denying preliminary injunction requiring state to supply at no cost to inmates with funds in institutional accounts "pads, pens, pencils, postage, photocopying and other legal materials" where inmates had not otherwise shown irreparable injury); *Ashely v. Dudlek*, 1995 WL 562292, at *7 (D. Del. Aug. 25, 1995) ("To the extent that this claim does not implicate a core *Bounds* issue, however, plaintiff must demonstrate that some actual injury occurred."). Petitioner has not established that "there was any instance in which [he was] unable to pursue any legal action" due to any requirement that he pay costs. *Peterkin*, 855 F.2d at 1039.

In sum, Petitioner has not provided support for these conclusory and overly broad allegations and, therefore, has not demonstrated how these alleged impediments actually prevented him from filing a habeas petition. Moreover, Petitioner's allegations about impediments to pursuing his legal claims are belied by his voluminous filings in this case and the numerous state postconviction filings

22

made after 2012.  Therefore, the Court concludes that the one-year period of limitations began to run when Petitioner's 2012 VOP judgment became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final, and the statute of limitations begins to run, upon expiration of the ninety-day time period allowed for seeking certiorari review.  *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).  In this case, the Delaware Supreme Court affirmed Petitioner's 2012 VOP judgment on February 4, 2013, and he did not seek review by the United States Supreme Court.  As a result, his judgment of conviction became final on May 6, 2013.[7]  Yet, since the Superior Court subsequently modified Petitioner's VOP sentence on December 30, 2014, (D.I. 104-20 at 52), the modified sentence date becomes the relevant date for determining the finality of Petitioner's judgment under § 2244(d)(1)(A).  *See Cochran v. Phelps*, 600 F. Supp. 2d 603, 607 (D. Del. 2009).  Petitioner did not appeal his modified sentence and, therefore, his VOP judgment became final thirty days later, on January 29, 2015.  Applying the one-year limitations period to that date, Petitioner had until January 29, 2016 to timely

---

[7]The last day of the ninety-day period to seek certiorari review fell on May 5, 2013, which was a Sunday.  Therefore, the period extended to the end of Monday, May 6, 2013.  *See* U.S. Supr. Ct. R. 39(1).

file a habeas petition challenging his 2012 VOP. *See Wilson v. Beard*, 426 F.3d 653, 662-64 (3d Cir. 2005) (Fed. R. Civ. P. 6(a) applies to AEDPA's limitations period); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the date it began to run).

Petitioner filed the instant Petition on January 8, 2020,[8] almost four full years after that deadline. Thus, the Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled, or Petitioner makes a gateway showing of actual innocence. *See Jones,* 195 F.3d at 158; *see Wallace*, 2 F.4th at 151 (explaining that actual innocence is an "exception to the statute of limitations" rather than an "extension to the statute of limitations via equitable tolling."). The Court will discuss each doctrine in turn.

---

[8]Pursuant to prisoner mailbox rule, the Court views the postmark date on the envelope for Petitioner's initial Memorandum – January 8, 2020 – as the filing date. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003) (the date on which a prisoner transmitted documents to prison authorities for mailing is to be considered the actual filing date).

### 1. Statutory tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the motion is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). A post-conviction motion is "'properly filed' for statutory tolling purposes when its delivery and acceptance is in compliance with the state's applicable laws and rules governing filings, such as the form of the document, any time limits upon its delivery, the location of the filing, and the requisite filing fee." *Crump v. Phelps*, 572 F. Sup. 2d 480, 483 (D. Del. 2008). The limitations period is also tolled for the time during which an appeal from a post-conviction decision could be filed even if the appeal is not eventually filed. *See Swartz,* 204 F.3d at 424. The limitations period, however, is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Att'y of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

Here, the one-year limitations period began to run on January 30, 2015, and

ran without interruption until it expired one year later, on February 1, 2016.[9]

Petitioner's March 2015 motion for modification of sentence that he filed in the

Superior Court does not statutorily toll the limitations period because it was

dismissed as untimely and, therefore, was not properly filed.  Thus, statutory

tolling does not render Claims Twelve to Twenty timely filed.

### 2.  Equitable tolling

The one-year limitations period may be tolled for equitable reasons in rare

circumstances when the petitioner demonstrates "(1) that he has been pursuing his

rights diligently, and (2) that some extraordinary circumstance stood in his way

and prevented timely filing."  *Holland*, 560 U.S. at 649-50.  With respect to the

diligence inquiry, equitable tolling is not available where the late filing is due to

the petitioner's excusable neglect.  *Id.* at 651-52.  Additionally, the obligation to

act diligently "does not pertain solely to the filing of the federal habeas petition,

rather it is an obligation that exists during the period [the petitioner] is exhausting

state court remedies as well."  *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005).

As for the extraordinary circumstance requirement, "the relevant inquiry is not

whether the circumstance alleged to be extraordinary is unique to the petitioner,

but how severe an obstacle it creates with respect to meeting AEDPA's one-year

---

[9]The last day of the limitations period ended on January 30, 2016, which was a
Saturday.  Therefore, the limitations period extended through the end of the day on
Monday, February 1, 2016.  *See* Fed. R. Civ. 6(a)(3).

26

deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011).  An extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d. Cir. 2013).

To the extent Petitioner's already-discussed contention concerning the alleged State-created impediments to filing should also be viewed as an attempt to demonstrate that those alleged impediments constitute extraordinary circumstances triggering equitable tolling, his argument is unavailing. Petitioner does not provide any support for his conclusory assertions and, once again, the numerous state postconviction filings and litigation since 2012 belie his argument that he was unable to timely pursue habeas relief for Claims Twelve through Twenty.  Nor does any limitation on Petitioner's ability to access the internet constitute an extraordinary circumstance warranting equitable tolling, because he has not demonstrated how that alleged restricted access prevented him from timely pursuing relief for the instant Claims. *See Hartmann,* 2004 WL 2713104, at *4. Finally, to the extent Petitioner's late filing in this Court was due to a lack of legal knowledge or miscalculation of AEDPA's one-year filing period, such circumstances do not warrant equitably tolling the limitations period. *See Taylor v. Carroll*, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004).

27

Given these circumstances, the Court concludes that equitable tolling is not

available to Petitioner on the facts he has presented.

### 3. Actual innocence

A credible claim of actual innocence may serve as an "equitable exception"

that can overcome the bar of AEDPA's one-year limitations period. *See*

*McQuiggin v. Perkins*, 569 U.S 383, 392 (2013); *Wallace*, 2 F. 4th at 150-151.

Petitioner, however, has not provided new reliable evidence of his actual

innocence.

Accordingly, for all these reasons, the Court concludes that Claims Twelve

through Twenty should be dismissed as time-barred.

### C. Claims Twenty-One to Thirty-One: Challenges to Petitioner's 2019 VOP

Petitioner asserts the following ten Claims challenging his 2019 VOP

decision: (1) Claim Twenty-One – Petitioner did not receive timely notice of the

2019 VOP proceedings (D.I. 8-3 at 4, 6;  D.I. 8-4 at 8); (2) Claim Twenty-Two –

the State violated Petitioner's due process rights by proceeding to a VOP hearing

pursuant to an administrative warrant rather than pursuant to a formal arrest

warrant or a grand jury indictment (D.I. 8-3 at 10; D.I 8-4 at 2); (3) Claim Twenty-

Three – there was insufficient evidence to support the VOP finding because the

State relied on hearsay, there was no *corpus delicti* or independent proof of his

28

criminal conduct, and the State did not "allege and prove" the required "knowingly, intelligently, and intentionally" elements for the criminal charges (D.I. 8 at 27; D.I 8-3 at 7); (4) Claim Twenty-Four – the State maliciously prosecuted Petitioner (D.I. 8-3 at 7); (5) Claim Twenty-Five – the State had a duty to represent all members of the public (including Petitioner), and it violated that duty in prosecuting the VOP (D.I. 8 at 30); (6) Claim Twenty-Six – Petitioner's counsel provided ineffective assistance during the VOP hearing by not challenging the administrative warrant, requesting a bill of particulars, preparing for the hearing, investigating illegal conduct by the State's witnesses and others associated with the Department of Corrections, effectively cross-examining the State's witnesses at the hearing, and retaining unspecified experts (D.I. 8 at 26, 28); (7) Claim Twenty-Seven – the State's witnesses at the hearing conspired to withhold exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (D.I. 8 at 27); (8) Claim Twenty-Eight – Petitioner was not provided with *Miranda* warnings prior to "interrogations" "in alleged treatment groups," and the group sessions and polygraph testing have forced Petitioner to incriminate himself in violation of the Fifth Amendment (D.I. 8-3 at 3, 10, 22); (9) Claim Twenty-Nine – Petitioner's probationary conditions were involuntarily imposed (D.I. 8-3 at 3); (10) Claim Thirty – Petitioner was entitled to representation by counsel on appeal from the Superior Court's 2019 VOP decision (D.I. 8 at 28); and (11) Claim

Thirty-One – the Delaware courts violated Petitioner's rights under the First,
Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, Fourteenth, Fifteenth, and Sixteenth
Amendments (D.I. 56).

### 1. Claims Twenty-One and Twenty-Six to Thirty-One are procedurally barred

Petitioner presented Claim Twenty-Six (ineffective assistance of counsel) to
the Delaware Supreme Court on appeal from the Superior Court's 2019 VOP
decision.  The Delaware Supreme Court refused to consider the argument because,
under well-settled Delaware law, ineffective assistance of counsel claims cannot be
raised on direct appeal; rather, they must be raised for the first time in a Rule 61
motion for post-conviction relief.  *See Hartmann*, 2019 WL 6813986, at *2.  By
applying the well-established Delaware rule that ineffective assistance of counsel
claims cannot be presented for the first time on direct appeal, the Delaware
Supreme Court articulated a "plain statement" under *Harris v. Reed* that its
decision rested on a state law ground that is an independent and adequate state
procedural rule effectuating a procedural default.  *See Ducote v. Phelps,* 2010 WL
3860995, at *8 n.5 (D. Del. Sept. 28, 2010).  Therefore, the Court cannot review
the merits of Claim Twenty-Six absent a showing of cause for the default, and
prejudice resulting therefrom, or upon a showing that a miscarriage of justice will
occur if the Claim is not reviewed.

In turn, the record reveals that Petitioner did not exhaust state remedies for Claims Twenty-One and Twenty-Seven to Thirty-One because he did not present the Claims to the Delaware Supreme Court on appeal from his 2019 VOP decision. At this juncture, any attempt by Petitioner to raise the Claims in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Rule 61(i)(1) and as second or successive under Rule 61(i)(2). *See* Del. Super. Ct. Crim. R. 61(i)(1) (establishing a one-year deadline for filing Rule 61 motions); Del. Super. Ct. Crim. R. 61(i)(2) (providing that second or successive motions shall be summarily dismissed unless they meet the pleading requirements of Rule 61(d)(2)(i) or (ii)). Although Rule 61provides for an exception to its procedural bars if a Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant Claims. Similarly, the exceptions to the bars contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies. Therefore, Claims Twenty-One and Twenty-Seven through Thirty-One are procedurally defaulted, which means that the Court cannot review their merits absent a showing of either cause and prejudice or that a miscarriage of justice will result absent such review.

31

Petitioner does not assert, and the Court cannot discern, any cause for his

failure to include Claims Twenty-One and Twenty-Seven to Thirty-One in his

appeal to the Delaware Supreme Court from the denial of the Superior Court's

2019 VOP decision.[10]  To the extent the Court should construe Petitioner's

contention regarding the previously discussed alleged State-created impediments to

filing as an attempt to establish cause for his failure to present Claim Twenty-Six

in a Rule 61 motion to the Superior Court, the attempt is unavailing.  The Delaware

Supreme Court affirmed the Superior Court's 2019 VOP decision on December 12,

2019[11] and, in that decision, indicated how Petitioner could properly present an

ineffective assistance of counsel claim to the Delaware state courts.  Yet, less than

one month later, instead of filing a Rule 61 motion in the Superior Court, Petitioner

filed his Petition in this proceeding (*see* D.I. 3).  These events demonstrate that the

alleged impediments did not prevent Petitioner from pursuing federal habeas relief

and suggest that his failure to file a Rule 61 motion asserting the ineffective

---

[10]The Court does not view Petitioner's previously discussed assertion regarding the alleged State-created impediments to filing as an attempt to establish cause for his default of Claims Twenty-One and Twenty-Seven through Thirty-One.  Petitioner was able to timely file a *pro se* appeal from the Superior Court's 2019 VOP decision that included Claims Twenty-One through Twenty-Six despite the alleged State-created impediments, (D.I. 104-19), and the Court cannot discern any reason why those alleged impediments to *filing* would have prevented Petitioner from *including* some grounds for relief while not preventing him from including other grounds.

[11](D.I. 104-21); *see Hartmann*, 2019 WL 6813986, at *3.

32

assistance of counsel argument in Claim Twenty-Six was the result of a purposeful decision.

The absence of cause eliminates the need to address the issue of prejudice. Additionally, Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims Twenty-One and Twenty-Six through Thirty-One as procedurally barred.

### 2. Section 2254(d) and Claims Twenty-Two, Twenty-Three, and Twenty-Five

Petitioner presented Claims Twenty-Two, Twenty-Three and Twenty-Five to the Delaware Supreme Court on appeal from the Superior Court's 2019 VOP decision. The Delaware Supreme Court denied the Claims as meritless. Therefore, Petitioner will only be entitled to habeas relief for the instant Claims if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts.

### a. Claim Twenty-Two

In Claim Twenty-Two, Petitioner appears to contend that his due process rights were violated because the State "fraudulently and deceitfully" proceeded to a VOP hearing pursuant to an administrative warrant rather than a criminal warrant

or grand jury indictment. (D.I. 8-3 at 10-11; D.I. 8-4 at 2) Petitioner presented a substantially similar argument to the Delaware Supreme Court on appeal from the 2019 VOP decision by arguing that he was denied due process because there was no indictment for the new VOP charge. (D.I. 104-19 at 5) The Delaware Supreme Court denied the argument because Petitioner's VOP proceeding was not a criminal trial and the State was not required to file new criminal charges against him. *See Hartmann*, 2019 WL 6813986, at *2.

A "person's right to reasonable notice of a charge against him ... [is] basic in our system of jurisprudence." *In re Oliver*, 333 U.S. 257, 273 (1948). It is well-settled that due process requires an accused to be informed of the specific charge against him,[12] and that reasonable notice "sufficiently apprises the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, 763 (1962). However, the Supreme Court has never held that "the only constitutionally sufficient means of providing the notice required by the Sixth and Fourteenth Amendments is through the charging document." *Hartman v. Lee*, 283 F.3d 190, 195 (4th Cir. 2002). Indeed, federal courts considering the issue have held that the due process notice requirement may be satisfied even if the indictment or information was deficient so long as the defendant received actual notice of the charges against him and the inadequate indictment did not lead to a trial with an

---

[12]*See Cole v. Arkansas*, 333 U.S. 196, 201 (1948).

34

unacceptable risk of convicting the innocent.  *See Hartman*, 283 F.3d at 195; *Parks v. Hargett*, 1188 F.3d 519 (Table), 1999 WL 157431 (10th Cir. Mar. 23, 1999); *Hulstine v. Morris*, 819 F.2d 861, 864 (8th Cir.1987).  In order for notice to be effective, "it need only assure that the [probationer] understands the nature of the alleged violation." *United States v. Sistrunk*, 612 F.3d 988, 992 (8th Cir.2010).

It is also well-settled that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). "[R]evocation proceedings are informal proceedings 'more flexible than a criminal trial.'" *United States v. Pinkney*, 210 F. App'x 223, 227 (3d Cir. 2007). Consequently, there are minimal due process requirements that must be observed during probation revocation proceedings, including:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e ) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

35

*Gagnon*, 411 U.S. at 786.  In addition, there is no federal constitutional right to a grand jury in state criminal proceedings.  *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1972) ("[T]he Court has never held that federal concepts of a 'grand jury,' binding on the federal courts under the Fifth Amendment, are obligatory for the States.").

Here, although the Delaware Supreme Court did not cite any United States Supreme Court precedent when it rejected Petitioner's contention that the State violated his due process rights by pursuing a parole violation hearing without first obtaining a criminal indictment, the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application, the clearly established principles articulated in *Morissey*, *Gagnon*, and *Alexander*.  The administrative warrant and VOP Report issued prior to Petitioner's VOP hearing clearly state that Petitioner violated his probation by having sexual contact with a minor.  (D.I. 104-20 at 53)  Even though the record does not reflect if Petitioner was served with these documents, the transcript of the VOP hearing reveals that the allegations in the administrative warrant and VOP report were the focus of the hearing.  (D.I. 104-2 at 71-72)  Importantly, at no point during that hearing did Petitioner assert that he lacked actual notice of the alleged probation violations.  (D.I. 104-20 at 65-76)  Petitioner also does not explain how his defense to the 2019 VOP would have differed had he received another type of written notice of his probation violations.

36

Given these circumstances, the Court will deny Claim Twenty-Two for failing to

satisfy § 2254(d).

### b. Claim Twenty-Three

In Claim Twenty-Three, Petitioner contends there was insufficient evidence

to support the Superior Court's 2019 VOP finding.  He argues that the State

impermissibly relied on hearsay, and that there was no *corpus delicti* or

independent proof of his criminal conduct.  (D.I. 8 at 27; D.I. 8-3 at 7)  Petitioner

also appears to argue that the State was required to prove the VOP beyond a

reasonable doubt.  (D.I. 8 at 27)  Petitioner raised substantially similar claims to

the Delaware Superior Court on appeal from the Superior Court's VOP finding.

(D.I. 104-19 at 2-4)  The Delaware Supreme Court rejected Petitioner's argument

and held that "there was sufficient evidence to support the Superior Court's finding

that [Petitioner] had violated his probation."  *Id.*

The clearly established federal law governing an insufficient evidence claim

for criminal convictions is the rule articulated by the United States Supreme Court

in *Jackson v. Virginia*, 443 U.S. 307 (1979).  Pursuant to *Jackson*, "the relevant

question is whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt."  *Id.* at 319.  Yet, as the *Morissey* Court

explained, "the full panoply of rights due a defendant in [a criminal proceeding]

37

does not apply to parole revocations." *Morissey* 408 U.S. at 480; *see United States v. Knights*, 534 U.S. 112, 120 (2001) (probationers re-engaging in criminal activities "face risk of probation, and possible incarceration, in proceedings in which the trial rights of a jury and proof beyond a reasonable doubt, among other things, do not apply"). Consequently, in probation revocation proceedings, the government must prove a violation of probation by a preponderance of the evidence rather than beyond a reasonable doubt. *See United States v. Dees*, 467 F.3d 847, 855 (3d Cir. 2006); *see also United States v. Hicks*, 510 F. App'x 167, 177 (3d Cir. 2013). The Supreme Court defines a preponderance of the evidence as proof which leads the fact finder to conclude "that the existence of a fact is more probable than its nonexistence." *In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring). When applying the preponderance of the evidence standard, a court may consider hearsay evidence without violating the probationer's due process rights. *See United States v. Stephens*, 519 F. App'x 94, 95 (3d Cir. 2013). In turn, at least two federal circuit courts have found that the *corpus delicti* rule[13] is

---

[13]The *corpus delicti* rule "prohibits the prosecution from proving the *corpus delicti* based solely on a defendant's extra-judicial statements." *Corpus delicti rule*, Black's Law Dictionary (11th ed. 2019). *See also Warszower v. United States*, 312 U.S. 342, 347 (1941) ("The rule requiring corroboration of confessions protects the administration of the criminal law against errors in convictions based upon untrue confessions alone.").

inapplicable to revocation proceedings. *See United States v. Riley*, 920 F.3d 200, 208-09 (4th Cir. 2019); *United States v. Hilger*, 728 F.3d 947, 950 (9th Cir. 2013).

The Delaware Supreme Court's decision that there was sufficient evidence supporting the Superior Court's finding that Petitioner violated his probation was neither contrary to, nor based on an unreasonable application of, clearly established federal law. During the VOP hearing, Ms. Holloway – the director of the sex offender program at Connections – testified and explained how Petitioner admitted to having sexual contact with someone he had met at a coffee shop who was under the age of eighteen. *Id*. Senior Probation and Parole Officer[14] Johnson corroborated Ms. Holloway's testimony by testifying about Petitioner's admissions to her. *Id*. Officer Johnson also testified that Petitioner's GPS monitoring device showed that he was spending a substantial amount of time at a coffee shop. *Id*. Petitioner's counsel cross-examined both individuals. Petitioner's counsel argued that the testimony describing Petitioner's statements during group therapy did not e "competent evidence to show that [Petitioner] committed the offense in question." (D.I. 104-20 at 73) Petitioner's counsel also argued that the *corpus delicti* rule applied and required "some reason to believe that [Petitioner] has actually done this [act] other than his own statements." (D.I. 104-20 at 74) The State responded, arguing that: (1) the evidence presented was "competent evidence" because

---

[14](*See* D.I. 104-20 at 69)

Petitioner's "statements were not hearsay as they were statements by a party opponent"; and (2) it was "not aware of authority to the effect that there's a *corpus delicti* requirement for a violation of probation," and the GPS records provided "sufficient corroboration of the [Petitioner's] story." (*Id.*) After stating that it had considered "all the evidence presented as well as the arguments of counsel," the Superior Court held that "the State has shown by a preponderance of the evidence that [Petitioner] violated the conditions of his probation." (*Id.*)

On appeal, Petitioner argued that there was insufficient evidence to support the Superior Court's finding that he violated his probation and that the State's evidence only consisted of hearsay. After noting that the rules of evidence are relaxed in a VOP hearing, the Delaware Supreme Court explained that the "sex offender conditions that [Petitioner] singed upon his release from incarceration to probation were admitted into evidence," and the conditions "included a requirement that [Petitioner] have no contact with anyone under the age of eighteen." *Hartmann*, 2019 WL 6813986, at *2. Citing Delaware Rule of Evidence 801, the Delaware Supreme Court rejected Petitioner's argument that his statements to Ms. Holloway and Officer Johnson were hearsay, explaining that a party's own statement that is offered against him is "an admission by a party-opponent and is not hearsay." *Id.* Viewing Petitioner's admissions to Ms. Holloway and Officer Johnson under the preponderance of the evidence standard,

40

the Delaware Supreme Court held that there was sufficient evidence to support the Superior Court's finding that Petitioner violated his probation. *See id.*

Upon thorough review of the record, the Court concludes that the Delaware courts neither unreasonably determined the facts nor unreasonably applied clearly established federal law when holding that there was sufficient evidence to support the Superior Court's violation finding. In concluding that there was sufficient evidence to support the Superior Court's VOP finding, the Delaware Supreme Court reasonably relied on the probation conditions in the document that Petitioner had signed upon his release from incarceration, which explicitly included the requirement that Petitioner could not have contact with anyone under eighteen years old. *See United States v. Poellintz*, 372 F.3d 562, 566 (3d Cir. 2004) (noting that a "court can revoke probation when it is reasonably satisfied that the probation conditions have been violated, without the government being required to present proof beyond a reasonable doubt that the defendant committed the alleged acts."). Additionally, the Delaware state courts reasonably applied federal law when they implicitly rejected Petitioner's contention that the *corpus delicti* rule applied in his VOP proceeding, and the Court defers to the Delaware state courts' conclusion that Petitioner's admissions to Ms. Holloway and Officer Johnson were not hearsay under D.R.E. 801. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("State courts are the

41

ultimate expositors of state law."). Accordingly, the Court will deny Claim

Twenty-Three for failing to satisfy the requirements articulated in § 2254(d).

### c. Claim Twenty-Five

In Claim Twenty-Five, Petitioner contends that the State violated a duty to

represent the public, including himself. (D.I. 8-3 at 7) Petitioner argues that the

State failed "its duty to expose con-job, conspirators, extortionists [...] reporting

to police." (D.I. 8 at 27) Petitioner raised a substantially similar argument to the

Delaware Supreme Court on appeal from his 2019 VOP. (D.I. 8-3 at 7) The

Delaware Supreme Court denied the argument as meritless.

Although not entirely clear, Petitioner's allegations of extortion and

conspiracy appear to be an attempt to establish the falsity of the information that

was provided to the police about his actions that led to the VOP charges. The

Court has thoroughly reviewed the record and has found no facts to support

Petitioner's rather oblique allegation that the State failed to uncover any

conspiracy, acts of extortion, or false accusations related to Petitioner's activities.

Therefore, the Court concludes that the Delaware Supreme Court did not

unreasonably determine the facts when denying the instant argument.

Accordingly, the Court will deny Claim Twenty-Five as factually baseless.

### 3. Claim Twenty-Four

Liberally construing Claim Twenty-Four, Petitioner appears to contend that the State maliciously prosecuted him by initiating the 2019 VOP proceeding. (D.I. 8 at 30; D.I. 8-3 at 7)  Although Petitioner presented a malicious prosecution argument to the Delaware Supreme Court on appeal from his 2019 VOP decision (D.I. 104-1 at 2), the Delaware Supreme Court did not address it. *See generally Hartmann*, 2019 WL 6813986.  Typically, in these circumstances, the Court would review Petitioner's malicious prosecution argument *de novo*. *See Holloway v. Horn*, 355 F.3d 707, 718-19 (3d Cir. 2004).  Yet, a claim alleging malicious prosecution is viewed as a common law tort cause of action that is usually presented in a civil rights action under 42 U.S.C. § 1983 rather than in a habeas proceeding. *See Williams v. Winter*, 2022 WL 3702930, at *5 (M.D. Pa. Aug. 5, 2022); *Peacock v. New Mexico*, 2021 WL 3602519, at *2 (D. N.M Aug. 13, 2021); *Bazley v Ladreyt*, 2016 WL 9110365, at *11 (E.D. La. Feb. 17, 2016). Accordingly, the Court will dismiss Claim Twenty-Four for failing to assert an issue cognizable on federal habeas review.

### D. Additional Noncognizable Claims

Petitioner presents the following additional claims asserting errors of Delaware statutory or constitutional law: (1) the Superior Court unlawfully increased his sentences in 2011 and 2019 in violation of 11 Del. Code § 4333 (D.I.

43

8-3 at 15); (2) "criminal sentences [were] not provided lowest sentence[] standard

for criminal charges, without required reasoning for higher sentences on the

record" (D.I. 8-3 at 10); (3) he was wrongfully sentenced to complete the

Transitions Sex Offender Program (D.I. 8-3 at 14, 22); (4) "[s]entencing law does

not allow judges to use imprisonment as a means of promoting rehabilitation" (D.I.

8-4 at 15); (5) he has experienced numerous violations of the Delaware

constitution (D.I. 31-1); and (6) the Delaware Supreme Court failed to address

Petitioner's motion for an extension of time (D.I. 8-3 at 25).  Petitioner also

presents the following issues concerning the conditions of his confinement: (1) he

does not have internet access (D.I. 8-3 at 14); (2) he has suffered from abuse,

neglect, torture, mistreatment and terror by the DOC staff (D.I. 8-4 at 16, 18); (3)

his health care is inadequate (D.I. 8-2 at 26-27; D.I. 8-4 at 21); (4) he has been

subjected to unlawful searches and seizures (D.I. 8-2 at 20); (5) the State has not

provided accommodations for his disabilities (D.I. 8-2 at 29); and (6) the prison's

grievance process is inadequate (D.I. 8-2 at 28; D.I. 8-4 at 21; D.I. 65).  Finally,

Petitioner appears to contend that his group therapy sessions forced him to disclose

private health information to group members in violation of the Health Insurance

Portability and Accountability Act ("HIPAA").  (D.I. 8-3 at 23)

None of these claims – which either present errors of Delaware law or challenge the conditions of Petitioner's confinement – assert issues that are cognizable on federal habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (reiterating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002) (explaining that "when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate.").  In addition, since HIPAA does not provide individuals with a private right of action or constitutional claim, Petitioner's HIPAA argument does not assert an issue cognizable on federal habeas review.  *See, e.g., Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 469 (D.N.J. 2013).  Therefore, the Court will dismiss the instant Claims for failing to assert issues cognizable on habeas review.

### E. Vague, Unintelligible, and Conclusory Claims

Petitioner also asserts the following claims for relief:  (1) "[p]rior [e]xhausted [g]rounds in [p]rior [h]abeas [c]orpus petition" (D.I. 8-1 at 13 of 30); (2) "[f]amily rights omitted, denied, ignored, obstructed to, deliberately indifferently" (*Id.*); (3) the State failed to allege "criminal negligence, criminal

45

intention, criminally knowingly, acting criminally recklessly, not knowledge of

risk" (D.I. 8-4 at 1); (4) the State did not "allege and prove consciousness of guilt

criminally" (*Id.*); (5) the State did not "allege and prove criminal liability as to a

voluntary act to do a crime" (*Id.*); (6) the State did not "allege and prove

individualized proof of [Petitioner's] state-of-mind" (*Id.*); (7) "[b]ail not proven to

prevent damage[,] release only for non-indigent discriminatory[,] damages from

imprisonment[,] not individualized" (*Id.*); (8) "[t]ime of alleged occurrences had to

be proven" (*Id.*); (9) various words are "too vague, overbroad, and/or relative, too

dependent on one[']s experiences" (D.I. 8-4 at 2-4); (10) the "State did not allege

and prove causation conduct by [Petitioner]" (D.I. 8-4 at 5); (11) "'[n]atural and

probable consequences' did not mean [Petitioner] did the alleged charges" (*Id.*);

(12) the "State failed to allege and prove the circumstances surrounding 'the acts'

alleged" (D.I. 8-4 at 6); (13) "'[p]rima facie' is wrongful description to be

sufficient for these [two] criminal charges" (D.I. 8-4 at 7); (14) "'Certain' requires

certainty, dependable, factually based, indisputable, undeniable allegations by

State" (*Id.*);  (15) "[m]orality cannot be legislated nor enforced by a court, as State

depends on, and convict on because there was no actual injury, no victim, legal

morality element required" (D.I. 8-4 at 14); "(16) [l]egal elements and sentencing

guidelines for assault, battery and bodily damaging conduct/crimes, and unlawful

sexual contact not equal, meaningful, capably, empirically distinguished injury

46

levels, conclusive and fair, but presumptive, wrongfully subjective, bias, prejudice, and discriminatory, at the WWAB (whims, winds, attitudes, beliefs of each person, in the moment, of current knowledge, wisdom)" (*Id.*); (17) Petitioner's "VOP hearing sentence was more than original criminal case" (D.I. 8 at 28); and (18) the "State failed to allege and prove how this defendant's society will be protected and needed protecting" (D.I. 8-4 at 15).

These vague, unintelligible, and conclusory arguments do not provide sufficient information for the Court to determine whether Petitioner's allegations warrant relief. Consequently, the Court will dismiss the aforementioned arguments for failing to "state facts that point to a real possibility of constitutional error." *Blackledge v. Allison*, 431 U.S. 63, 76 n.7 (1977).

### F. Pending Motions

The following Motions are presently pending in this case: (1) Motion for Release from Custody (D.I. 108); (2) combined Motion for the Appointment of Counsel, Striking the State's Answer, Immediate Release, and Default Judgment (D.I. 109); (3) Motion for Sealing When Appropriate and Affidavit (D.I. 111); (4) Motion for Appointment of Counsel (D.I. 112); (5) Motion for Waiver of Docket Copy Fees (D.I. 113); (6) Motion for Three Strikes Objections from Court's Order (D.I. 114); (6) Motion for Class of One Status (D.I. 115); and (7) Motion for Court Documents (D.I. 119). Having determined that the instant Petition does not

warrant habeas relief, the Court will dismiss all the aforementioned Motions as

moot.  The Court also notes that three of the Motions (D.I. 108; D.I. 114; D.I. 115)

are duplicative of motions Petitioner filed in his civil action, *Hartmann v. Troxler*,

Civ. A. No. 21-1687-GBW.  (*See id.* at D.I. 36; D.I. 38; D.I. 40)

## IV.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also

decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2

(2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when

a petitioner makes a "substantial showing of the denial of a constitutional right" by

demonstrating "that reasonable jurists would find the district court's assessment of

the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also*

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In addition, when a district court

denies a habeas petition on procedural grounds without reaching the underlying

constitutional claims, the court is not required to issue a certificate of appealability

unless the petitioner demonstrates that jurists of reason would find it debatable: (1)

whether the petition states a valid claim of the denial of a constitutional right; and

(2) whether the court was correct in its procedural ruling.  *See Slack*, 529 U.S. at

484.

The Court has concluded that the instant Petition does not warrant relief.

Reasonable jurists would not find this conclusion to be debatable.  Accordingly,

the Court will not issue a certificate of appealability.

## V.   CONCLUSION

For the reasons discussed, the Court concludes that the instant Petition must be denied without an evidentiary or the issuance of a certificate of appealability. The Court also orders all pending Motions (D.I. 108; D.I. 109; D.I. 111; D.I. 112; D.I. 113; D.I. 114; D.I. 115; D.I. 119) to be dismissed as moot.  An appropriate Order will be entered.